## Seitz Company v. Bank of Murray.

(Decided July 1, 1924.)

### Appeal from Calloway Circuit Court.

1. Banks and Banking—Liability of Bank for Defaulting Agent Depositing Money in Bank in Own Name.—Where funds deposited in agent's name were intermingled in bank, for part of which bank was liable to his principal because consisting of checks to principal's order, indorsed by agent without authority, and for a part of which it was not liable, and agent accounted to his principal for a sufficient amount to cover amount for which bank was liable, and there was no way to segregate funds, principal failed to make out case of conversion against bank.

2. Trial—When Evidence Shows Injury to have been Inflicted in Either One of Two Ways, there can be no Recovery.—When evidence shows injury to have been inflicted upon plaintiff in either one of two ways, for one of which defendant is liable and for one of which he is not liable, there can be no recovery, and defendant is entitled to directed verdict.

BRADSHAW & MacDONALD for appellant.

WHEELER & HUGHES and COLEMAN & LANCASTER for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

O. M. Seitz, doing business as O. M. Seitz Co., filed his action against appellee Bank of Murray alleging that defendant had converted to its own use $2,347.09, represented by a number of checks made payable to the order of plaintiff, and which defendant had placed to the personal credit of one W. B. Johnson, plaintiff's agent, upon the unauthorized endorsement by Johnson of plaintiff's name on said checks; and alleges that Johnson had re-

paid to the plaintiff $638.92, and no more, upon the said sum, leaving a balance of $1,708.17 for which it prays judgment against defendant.

The answer denied the conversion, and in addition by way of estoppel affirmatively pleaded that Johnson was the authorized agent of plaintiff for the purpose of selling merchandise and collecting bills and accounts for the plaintiff on account of such merchandise so sold, and had authority to deposit said collections in the bank to his own credit; and that it was the custom of Johnson for several years before his shortage with the plaintiff was discovered to deposit in the bank of defendant cash and checks so collected by him for plaintiff's account to his own credit and make weekly reports of same to plaintiff, and settle with plaintiff each week for such collections by giving plaintiff his personal check on defendant's bank against Johnson's personal account, and that such custom was well known to and approved by the plaintiff, and plaintiff accepted the checks of Johnson for such collections so reported, and collected such checks from defendant; that such custom between plaintiff and Johnson had been in effect for several years, and all these things were relied upon as a ratification and approval by plaintiff of Johnson's method of handling his collections.

By reply it was admitted by plaintiff that Johnson had authority during the period named to make collections in the territory covered by him for plaintiff, in cash, and that he had authority to take checks payable to plaintiff from his customers, but had no authority in writing or otherwise to endorse plaintiff's name on or deposit same to his own credit in any bank.

On a trial the jury returned a verdict for defendant, and the plaintiff appeals.

Having reached the conclusion that defendant was entitled to the directed verdict for which it asked, it is unnecessary to consider the various grounds for reversal, for if defendant was so entitled the other errors become wholly immaterial.

The controversy arises out of the shortage of plaintiff's agent Johnson, and there is nothing to disclose exactly how or when the defalcation occurred, but it probably was a gradual accumulation throughout a period of about two years, during which time Johnson collected large sums in cash from his customers on plaintiff's account and also took during the same period a large num-

ber of checks payable to plaintiff for such accounts. Some of such checks he would either take or send to plaintiff directly, while some of them he would place to his personal credit in defendant bank by endorsing thereon the plaintiff's name. He would then every week or so make a report·of collections to plaintiff, and give his personal check on defendant for such amounts, or pay part in cash and give a check for the balance.

The plaintiff testified that he never knew until the 6th of September, 1920, that Johnson was placing in defendant bank to his personal credit any checks made payable to plaintiff, and endorsing such checks, but supposed always the personal checks which Johnson gave and sent to the house only covered amounts in cash collected by Johnson.

There is a failure to show what part of plaintiff's money so collected by Johnson, and deposited in defendant bank to his personal credit is represented by cash collections which he confessedly had a right to make, and what part of such sums is represented by the checks payable to plaintiff and wrongfully endorsed by Johnson and deposited in defendant's bank to his· credit. The evidence does show that during the period in question Johnson deposited in the bank something over $52,000, but how much of that was cash and how much was represented by checks endorsed without authority is not disclosed.

Neither the books of the bank nor the books of plaintiff show how much of these collections deposited in defendant bank was represented by cash, and how much by the checks endorsed without authority; but the amount of the checks given by Johnson to plaintiff against his personal account shows the payment to plaintiff of more than the aggregate amount of the checks belonging to plaintiff, so endorsed and deposited.

Keeping in mind, therefore, that Johnson is admitted to have had authority to make collections in·cash for which the bank is not liable, when it is shown by the evidence that Johnson has accounted to plaintiff for the full amount represented by the checks which he endorsed without authority, and for which amount alone the bank is responsible, can it be said that the plaintiff has made out its case for conversion against the bank when it has failed to show the funds alleged to have been converted were the funds represented by the ·checks and were not the funds represented by the cash?.

In other words, there are funds intermingled in a bank account by a defaulting agent, for a part of which the bank is liable to his principal, and for a part of which it is not liable. When the defaulting agent accounts to his principal for a sufficient amount of that aggregate sum to cover the amount for which the bank is liable, and there is no way to segregate the funds for which it is and is not liable, the plaintiff has failed to make out its case against the bank because it has not shown that the conversion grew out of the deposit by its agent of the checks bearing an unauthorized endorsement. So far as this record discloses the shortage may have been represented wholly by the cash collections for which the bank is not liable.

It is a well recognized and sound rule in this state, frequently applied in damage suits, that when the evidence shows an injury to have been inflicted upon a plaintiff in either one of two ways, for one of which the defendant is liable, and for one of which he is, not liable, there can be no recovery by the plaintiff, and that defendant is entitled to a directed verdict.

By analogy, there is no reason why that rule should not be applied to the facts of this case. The bank was liable if the shortage of plaintiff's agent accrued by reason of its acceptance and placing to the agent's credit checks payable to plaintiff, without an authorized endorsement; but it was not liable for the cash confessedly collected by plaintiff's agent and intermingled in his personal account with the funds represented by the checks. If, therefore, the checks given by the agent equal in amount the aggregate sum placed to his credit because of the unauthorized endorsement, and there is a failure to show that the shortage is not represented by the cash, the plaintiff has not made out his case.

The alleged conversion by the bank grows out of the payment by it of checks without the endorsement of the payee, whereby another is permitted to appropriate the payee's money. However, there is no completed conversion by the bank if such third party thereafter, before notice to the bank, accounts to the payee for such funds.

On the issue, therefore, of conversion or no conversion it is competent for defendant to show such accounting by the third party, and it likewise is incumbent upon plaintiff to show that loss to him resulted from the payment by the bank of such checks to the third party. It is not sufficient if he merely shows that such third party

—in this case his agent—is short in his accounts with plaintiff, but he must show the shortage grew out of the payment by the bank of the checks. If the shortage has occurred for some other reason the bank should not be made to bear it.

Here the agent had intermingled money which he had a right to collect, and for which the bank is not liable, with funds arising from the payment of such checks, for which the bank is liable. When it is shown that the agent has paid to his principal more than the amount of such checks, although he is still short in his accounts, it may not be said his shortage has resulted from the payment by the bank of the checks to him without authorized endorsements.

It may be just as well assumed the shortage resulted from his failure to account for funds which he had a right to collect and for which the bank is not responsible.

In such circumstances the plaintiff has failed to make out his case, for he has failed to show a completed conversion by the bank whereby plaintiff lost his money by reason of its unauthorized act.

The failure to show that plaintiff's loss resulted from the bank's payment of these checks is fatal to his recovery. If the loss may be as well attributed to a cause for which the bank is not liable, as to one for which it is liable, and because of the intermingling of the funds it cannot be traced to the latter cause, then the plaintiff has failed to make out his case.

Such a recovery would be based upon the speculative theory that the shortage was represented in the proceeds of the checks and not the cash.

Judgment affirmed.